# IN THE COURT OF APPEALS OF IOWA

No. 17-1430
Filed November 8, 2017

**IN THE INTEREST OF T.W.,**
   **Minor Child,**

**A.P., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Carroll County, Adria Kester, District Associate Judge.

A mother appeals the juvenile court order terminating the parental relationship with her two-year-old son. **AFFIRMED.**

Kevin E. Hobbs, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General for appellee.

Jessica L. Morton of Bruner, Bruner & Reinhart, L.L.P., Carroll, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Angela's addiction to methamphetamine and abuse of prescription painkillers resulted in her son T.W. being twice removed from her care and adjudicated as a child in need of assistance (CINA). The second CINA case ended in the termination of her parental rights. Angela appeals the juvenile court's termination ruling, alleging she has successfully engaged in treatment and has demonstrated parenting strengths. Our independent review of the record reveals unaddressed risks posed by Angela's substance abuse that prevent her from safely resuming care of T.W.[1] Accordingly, we affirm the termination ruling.

## I.    Facts and Prior Proceedings

T.W. was born in February 2015 with methamphetamine in his system—prompting the Iowa Department of Human Services (DHS) to remove him from his mother's care and adjudicate him as a CINA. The DHS approved a trial home placement in November 2015 and closed the CINA case in February 2016. But five days later, the DHS discovered Angela was abusing prescription medication—Oxycodone pills and Fentanyl patches—while caring for T.W. Case workers implemented a safety plan, including twice-daily drop-in services. One month later, Angela was found unresponsive in her apartment after a medication

---

[1] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State's proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

overdose. One-year-old T.W. was found alone in the hallway. A child protection assessment resulted in a founded report for the denial of critical care. The DHS again removed T.W. from his mother's care, placed him with maternal grandparents, and opened a new CINA case in April 2016.

Angela sought substance-abuse treatment in the summer of 2016. But by her own admission, because it was outpatient treatment, she "was sneaking and using here and there." Angela started inpatient substance-abuse treatment at the YWCA in October 2016. She stayed drug-free for two months.

In a November 2016 permanency order, the juvenile court continued placement of T.W. for "an additional period of up to six months" under Iowa Code section 232.104(2)(b) (2016) to allow Angela more time to achieve reunification. The DHS placed T.W. with Angela at the YWCA for an extended trial-home visit in December 2016. Soon after gaining unsupervised visitation with T.W., Angela relapsed on methamphetamine while meeting up with T.W.'s father. In early 2017, the DHS case workers learned Angela was pregnant with her fourth child; when that child, T.P., was born in April 2017, he tested positive for amphetamines.[2]

The State filed a petition for termination of parental rights in May 2017. Despite the pending termination action, the DHS allowed Angela an extended unsupervised visitation in early June. Just two days into the visitation, a police officer discovered T.W. sleeping unattended in a locked car outside of Angela's workplace. The officer knew the location to be a high-crime area of Fort Dodge. The officer reported fifteen minutes passed before he could locate Angela.

---

[2] The custody of T.P. is not at issue in this termination appeal.

Angela insisted she was gone only four minutes and T.W. was not in danger because she cracked the windows and parked in the shade. The DHS removed the child and placed him in his grandparents' care. DHS social worker Molli Mandernach testified she was "very alarmed" by Angela's decision and believed Angela would have been "extra vigilant" during the trial-home placement. Mandernach aptly described the unfortunate phenomenon: "Every time I've attempted to begin expanding her contact with him on an unsupervised basis, it has not worked, we've gotten ourselves into a dangerous situation."

The juvenile court held a combined permanency and termination-of-parental-rights hearing on June 22 and August 10, 2017. Angela testified about her addiction to methamphetamine, asserting she had "six months and five days clean." But she also acknowledged last using Fentanyl in May 2017 and using Hydrocodone just two days before the hearing. Angela also discussed receiving mental-health counseling for depression and anxiety. Mandernach recommended termination of parental rights, expressing concern Angela was in denial about the danger posed by her continued opiate use.

The juvenile court terminated Angela's parental rights under Iowa Code section 232.116(1)(e), (g) and (h) (2017). The court found termination was in T.W.'s best interests because Angela had been unable to provide the nurturing needed by her young son. Although T.W. had been living with maternal grandparents, they did not seek adoption. Instead, close family friends began foster-parent training and wished to be considered as an option to adopt T.W. Angela appeals the juvenile court's findings.

## II.    Statutory Basis for Termination of Parental Rights

Angela challenges the statutory grounds for termination. When, as here, the juvenile court rests its decision on more than one subsection of Iowa Code section 232.116(1), we may affirm on any ground that we find supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d at 707.

We will address the termination of Angela's parental rights under subsection (g), which requires the court to find that all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).

Angela does not contest the first two elements. T.W. was adjudicated as a CINA in April 2016. The State offered evidence showing a juvenile court in Carroll County terminated Angela's rights to an older child in September 2012. But Angela argues she has addressed her drug usage and mental health issues. She points to her "documentation of clean drug screens and records showing consistent attendance with her therapist." Angela asserts an additional period of rehabilitation would correct the situation.

We cannot accept Angela's assertions. The record contains clear and convincing evidence she continued to lack the ability or willingness to respond to

services—even through the time of the termination hearing. In candidly testifying about her methamphetamine addiction, Angela admitted: "If it's around, I'll do it." Indeed, she relapsed on methamphetamine in December 2016, while she was working to regain custody of T.W. and while pregnant with her fourth child. Angela also allowed an acquaintance to stay with her during the pendency of this case, despite knowing the woman was abusing illegal substances. Equally concerning, Angela did not appreciate the danger she faced from abusing prescription painkillers. Ample evidence showed Angela was unwilling or unable to take the steps necessary to stay drug free so she could safely resume caring for T.W. *See id.* § 232.116(1)(g)(3).

In addition, we find clear and convincing evidence an additional period of rehabilitation would not correct the situation. While Angela's efforts to overcome her methamphetamine addiction are commendable, she has not come to appreciate the risk posed by her continued use of prescription painkillers. "[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). In Angela's case, we doubt she will be in a drug-free position to safely parent T.W. in the foreseeable future. *See* Iowa Code § 232.116(1)(g)(4). The juvenile court properly terminated Angela's parental rights under section 232.116(1)(g). Termination was in T.W.'s best interests under the framework in section 232.116(2) and no factor in section 232.116(3) weighs against termination.

**AFFIRMED.**